

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-13-00035-CV

_____


RPI DENTON CENTER, LTD., Appellant

V.

TROY BROWN AND ALBERT SMITH, Appellees



On Appeal from the 367th District Court
Denton County, Texas
Trial Court No. 2012-50206-367



Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

# MEMORANDUM OPINION

Troy Brown and Albert Smith guaranteed the payment by HRT, Inc., of a sixty-five-month lease of Denton County[1] shopping center space from RPI Denton Center, Inc. After HRT quit paying rent some two years into the lease, RPI pursued two successive suits. In the initial suit against Brown and Smith[2] for damages that RPI "has suffered and continues to suffer as a result of their breach of the guaranty," a default judgment was entered for damages of $35,790.18, a sum less than the full amount of the guaranteed rentals for the remainder of the lease.[3] In the latter suit,[4] in which RPI intended to recover another portion of the guaranteed rentals,[5] the trial court entered a summary judgment for Brown and Smith, ruling that the second suit was barred by res judicata and limitations. Because (1) res judicata bars the second suit and (2) modifying the judgment was not error, we affirm the judgment of the trial court.

*(1)    Res Judicata Bars the Second Suit*

A traditional motion for summary judgment is granted only when the movant establishes that there are no genuine issues of material fact and that it is entitled to judgment as a matter of

---

[1]Originally appealed to the Second Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We are unaware of any conflict between precedent of the Second Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

[2]The first suit also named HRT as a party defendant, but HRT is neither a party to this appeal of the second suit nor relevant to its resolution.

[3]The default judgment also added court costs and attorney's fees. The base sum of the judgment included rentals accrued from March through September 2008.

[4]RPI also sued a third guarantor, Mitchell Jones. When Jones failed to answer the lawsuit, an interlocutory default judgment was taken against him May 29, 2012. Jones has not appealed.

[5]The second suit sought to recover rentals accruing from October 1, 2008, through March 1, 2012.

2

law. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We review de novo the grant or denial of a motion for summary judgment "to determine whether a party's right to prevail is established as a matter of law." *Lamar Corp. v. City of Longview*, 270 S.W.3d 609, 613 (Tex. App.—Texarkana 2008, no pet.); *see Nash v. Beckett*, 365 S.W.3d 131, 136 (Tex. App.—Texarkana 2012, pet. denied) (citing *Mann*, 289 S.W.3d at 848). When both sides move for summary judgment and the trial court grants one motion and denies the other, we review both the grant and the denial. *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007). We therefore review the summary judgment evidence presented by each party, determine all questions presented, and render judgment as the trial court should have rendered. *Id.*; *Nash*, 365 S.W.3d at 136.

Res judicata is an affirmative defense under Rule 94 of the Texas Rules of Civil Procedure. TEX. R. CIV. P. 94. An affirmative defense is defined as "a denial of the plaintiff's right to judgment even if the plaintiff establishes every allegation in its pleadings." *Hassell Const. Co., Inc. v. Stature Commercial Co., Inc.*, 162 S.W.3d 664, 667 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (quoting *Bracton Corp. v. Evans Constr. Co.*, 784 S.W.2d 708, 710 (Tex. App.—Houston [14th Dist.] 1990, no writ)). RPI complains that Brown and Smith failed to rebut the summary judgment evidence RPI presented. Because Brown and Smith countered RPI's summary judgment motion with the affirmative defense of res judicata, it was not necessary to rebut RPI's summary judgment evidence. Instead, Brown and Smith's assertion of this affirmative defense, if successful, relieves them of liability even if all the elements of RPI's cause of action are established. *See Moulton v. Alamo Ambulance Serv., Inc.*, 414 S.W.2d 444,

3

448 (Tex. 1967); *Blus v. Fuselier*, 55 S.W.3d 204, 211 (Tex. App.—Texarkana 2001, no pet.). Accordingly, we initially consider whether the trial court was correct in concluding Brown and Smith proved as a matter of law the affirmative defense of res judicata.

"Res judicata, or claims preclusion, prevents the relitigation of a claim or cause of action that has been finally adjudicated, as well as related matters that, with the use of diligence, should have been litigated in the prior suit." *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex. 1992). It requires proof of three elements: (1) a prior final judgment on the merits by a court of competent jurisdiction, (2) identity of parties or those in privity with them, and (3) a second action based on the same claims as were raised or could have been raised in the first action. *Amstadt v. U. S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996). In *Barr*, the high court adopted a transactional approach to res judicata, holding:

> The scope of res judicata is not limited to matters actually litigated; the judgment in the first suit precludes a second action by the parties and their privies not only on matters actually litigated, but also on causes of action or defenses which arise out of the same subject matter and which might have been litigated in the first suit.

*Barr*, 837 S.W.2d at 630.[6] Additionally, the high court held that a determination of what constitutes the same subject matter requires a factual analysis of the previous lawsuit, and any cause of action which arises out of those same set of facts should have been litigated. *Id*.;

---

[6]Res judicata is "the generic term for a group of related concepts concerning the conclusive effects given final judgments." *Barr*, 837 S.W.2d at 628. The doctrine, however, actually encompasses two different concepts: "(1) claim preclusion (also known as res judicata); and (2) issue preclusion (also known as collateral estoppel)." *Id*. In practice, claim preclusion applies to prevent "the relitigation of a claim or cause of action that has been finally adjudicated, as well as related matters that, with the use of diligence, should have been litigated in the prior suit." *Id*. Issue preclusion, on the other hand, "prevents relitigation of particular issues already resolved in a prior suit." *Id*. Here, Brown and Smith moved for traditional summary judgment based only on the first of these concepts—i.e., claim preclusion.

*Lesikar v. Rappeport*, 104 S.W.3d 310, 315 (Tex. App.—Texarkana 2003, pet. denied). These inquiries are to be made pragmatically, "giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a trial unit conforms to the parties' expectations or business understanding or usage." *Barr*, 837 S.W.2d at 631.

The parties' primary point of contention stems from their differing view of the initial lawsuit. RPI contends the first lawsuit was an exercise of "its right under the lease and guaranty to recover the rental in periodic actions as it becomes due under the lease." According to RPI, suit was "filed . . . to recover the sum of $35,790.18" then accrued under the lease and guaranty.[7] RPI relies on *Austin Hill Country Realty, Inc. v. Palisades Plaza, Inc.*, 948 S.W.2d 293, 300 (Tex. 1997), for the proposition that "a landlord is entitled to sue for rent as it becomes due following the tenant's breach and abandonment" and may "reenter the premises without accepting surrender, forfeiting the lease or being construed as ejecting the tenant." RPI further contends that, because Brown and Smith did not prove RPI could not institute actions for past-due rent, their claim of res judicata could not succeed.

While Brown and Smith acknowledge that RPI was entitled to sue for rent as it became due, they maintain that RPI failed to do so. Instead, they claim the original lawsuit sought damages for the entire lease term. We examine the initial lawsuit in light of these contentions.

---

[7]The lease authorized RPI to "change door locks if [HRT was] delinquent in paying rent." Further, in the event HRT abandoned the premises, the lease allowed RPI to permanently change the locks on the leased premises. In the case of abandonment by HRT, the lease provides that it "shall continue in effect for so long as Landlord does not terminate [the] Lease, and Landlord may enforce all its rights and remedies under [the] Lease, including the right to recover the rental in periodic actions as it becomes due under [the] Lease."

5

RPI brought its initial lawsuit "to recover damages" for breach of the "lease and personal guaranties." RPI claimed that Brown and Smith failed to pay the rent, operating expenses, taxes, and insurance due and that "RPI is entitled to judgment against Brown, . . . and Smith, jointly and severally, for the damages which RPI has suffered and continues to suffer as a result of their breach of the Guaranty."

The remaining allegations relate to RPI's claimed damages. RPI alleged that the sum of "$16,194.10 has accrued under the terms of the Lease and Guaranty but has not been paid." Further, RPI claimed that, "[f]or the balance of the lease term, an additional $226,098.90 will accrue under the terms of the Lease and Guaranty." The trial court entered a default judgment September 29, 2008, awarding judgment in favor of RPI and against Brown and Smith in the principal amount of $35,790.18, plus court costs and attorney's fees in the amount of $2,500.00.

Where, as here, a tenant is alleged to have breached a lease by abandoning the property and ceasing to pay rental payments, the landlord can (1) maintain the lease, suing for rent as it becomes due; (2) treat the breach as an anticipatory repudiation, repossess, and sue for the present value of future rentals reduced by the reasonable cash market value of the property for the remainder of the lease term; (3) treat the breach as anticipatory, repossess, release the property, and sue the tenant for the difference between the contractual rent and the amount received from the new tenant; or (4) declare the lease forfeited (if the lease so provides) and relieve the tenant of liability for future rent. *Austin Hill Country*, 948 S.W.2d at 300; *see also W. Flavor-Seal Co. v. Kallison*, 389 S.W.2d 521, 522 (Tex. App.—San Antonio 1965, no writ) (on

6

default in payment of rent, landlord may either stand on contract and sue for each month's rent as it falls due or may sue for all damages for breach of contract).

Brown and Smith claim that the initial lawsuit was one for anticipatory breach. They point out that the petition specified the amount of damages already incurred, as well as the amount of damages that would continue to accrue through the term of the lease. Under the "Causes of Action" section of the petition, RPI "incorporated the provisions of the above paragraphs" and asked the trial court to order Brown and Smith to pay "the damages which RPI has suffered and continues to suffer as a result of their breach of the guaranty." The petition does not mention or reference a right to recover rental in periodic actions as it becomes due under the lease.[8]

In support of their position, Brown and Smith rely on *Crabtree v. Southmark Commercial Management*, 704 S.W.2d 478 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). In that case, the tenant abandoned office space in violation of a ten-year lease and failed to make any further payments. The landlord obtained a summary judgment in November 1984 for the principal amount of $7,037.85 together with attorney's fees. *Id*. at 479–80. The original petition in the first suit stated,

> The Defendant failed to make any further payment pursuant to the term of the lease for the common area maintenance charges and lease charges, and after crediting the $750.00 deposit there is a sum of at least $40,600.00 due and owing to the Plaintiff for rentals, damages to the premises, rehabilitation of the premises for releasing, rental adjustments and other reasonable charges.

---

[8]This allegation was made for the first time in the second amended petition filed in the second lawsuit.

*Id.* at 480.  In May 1985, the landlord obtained a second summary judgment against Crabtree in the principal amount of $3,750.00, plus attorney's fees.  *Id.* at 480–81.  This amount represented the total rent due for the intervening months between the first and second suits.  *Id.* at 481.  Even though the initial judgment awarded only a portion of the rents due under the lease term, the petition in the first suit set forth a claim for anticipatory breach and sought recovery "for total rent due under the remaining term of the lease."  *Id.*  The petition in the second suit was based on the same cause of action between the same parties.[9]  Because the landlord prevailed in the first suit as to the entire case, his cause of action merged into the judgment and dissolved.  The landlord was thus barred by the doctrine of res judicata from any recovery in the second suit.  *Id.*

Here, although RPI did not pray for recovery of a specific dollar figure—as was the case in *Crabtree*—it did allege the amount due and owing (at the time the lawsuit was filed) and further alleged a specific dollar figure representing the value of future rental payments through the lease term.  RPI sought recovery for damages which it "has suffered and continues to suffer" as a result of the breach.  RPI simply failed to add these figures in order to allege a specific amount of damages and failed to include them in the total amount of the default judgment in the

---

[9]The relevant part of the original petition in the second suit stated,

> The Defendant failed to make any further payment pursuant to the terms of the lease for the common area maintenance charges; and, as a result of the Defendant's breach, there is presently due and owing to the Plaintiff under the terms of the lease agreement the sum of at least $35,000.00 together with prejudgment interest on said sum, post-judgment interest for rentals, damage to the premises, rehabilitation of the premises for re-leasing, rental adjustments, common area maintenance charges and other charges as provided for in the lease agreement.

*Crabtree*, 704 S.W.2d at 481.

8

first suit. We do not believe the omission of the amounts has the effect of limiting the nature of the first suit.

RPI contends that it did not seek damages for the entire lease term, claiming that its reference to future damages in the initial petition was merely a factual averment. Instead, RPI contends, the initial suit was one for periodic rent payments for part of the lease term only. Texas courts have recognized this option for landlords for over a century. *Davidson v. Hirsh*, 101 S.W. 269 (Tex. Civ. App. 1907) (Landlord "had a right to stand upon the contract and sue for the rent as it fell due. . . ."). In such a case, however, suit is brought on the contract, and not for damages for a breach of it. *Speedee Mart, Inc. v. Stovall*, 664 S.W.2d 174, 177 (Tex. App.—Amarillo 1983, no writ); *Maida v. Main Bldg. of Houston*, 473 S.W.2d 648, 651 (Tex. App.—Houston [14th Dist.] 1971, no writ) (in suit for rent as it becomes due, suit is on contract and measure of recovery is contractual rental); *Davidson*, 101 S.W. at 269. Here, RPI sought to recover damages for a breach of the lease.

In support of its position that the initial suit was one for periodic rent payments, RPI also relies on the fact that it requested—in its motion for entry of default judgment—recovery against the defendants in the principal amount of $35,790.18. Moreover, the damage affidavit proved damages in only that amount. Finally, RPI points to the fact that the default judgment awarded only $35,790.18, rather than damages for the entire lease term.[10] Thus, RPI contends, the initial suit was one for contractual rent. We disagree.

---

[10]Default judgments have preclusive effect for purposes of res judicata. *Houtex Ready Mix Concrete & Materials v. Eagle Const. & Envtl. Servs., L.P.*, 226 S.W.3d 514, 519 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

9

The fact that RPI proved up damages in the first lawsuit in the amount of only $35,790.18, and hence received a judgment for that amount, is not determinative in the analysis of whether res judicata bars RPI's claims in the second lawsuit. As previously discussed, Texas courts examine "the factual basis of the claim or claims in the prior litigation" that "make up the gist of the complaint" in the res judicata analysis. *Barr*, 837 S.W.2d at 630. As in *Crabtree*, the amount of the initial judgment here did not include all damages requested in the original petition. *Crabtree* determined the initial suit was nonetheless a claim for anticipatory breach, based on the petition. Additionally, *Crabtree* noted that the judgment in the initial suit recited that "the Plaintiff is entitled to recover as to the entire case . . . . [damages awarded]." *Barr*, 837 S.W.2d at 630. Here, the judgment contained somewhat similar language, stating, "This judgment resolves all issues as to all parties and is a final and appealable judgment."[11]

Based on the foregoing analysis, we conclude that the first lawsuit was one for anticipatory breach, seeking damages for the entire lease term.[12] The fact that the judgment did not award the full amount of damages claimed does not change the nature of the initial pleading. Having so determined, we examine the claims in the second lawsuit.

---

[11]RPI summarily contends that its claims in the second lawsuit were not mature at the time of the first lawsuit. Here, however, RPI's claim for anticipatory breach was in existence at the time of the initial lawsuit. A party claiming anticipatory breach of a contract must establish the following three elements: (1) absolute repudiation of the obligation, (2) lack of just excuse, and (3) resulting damage. *Berg v. Wilson*, 353 S.W.3d 166, 174 n.11 (Tex. App.—Texarkana 2011, pet. denied). HRT had ceased to pay rent for a period of four months, and the locks on the doors of the leased premises were changed. HRT had abandoned the property. Under these facts, RPI was entitled to sue for anticipatory breach. *See Austin Hill Country*, 948 S.W.2d at 300.

[12]RPI apparently contends (in summary fashion) that, because it sought "actual damages" in the first lawsuit, that suit was nothing more than a periodic action for payment. We disagree. Actual damages in a breach-of-contract case include present and future damages. *See, e.g.,United Servs. Auto. Ass'n v. Croft*, 175 S.W.3d 457, 469 (Tex. App.— Dallas 2005, no pet.).

10

RPI's complaints against Brown and Smith in the second lawsuit are very similar to the complaints asserted in the first. The parties in the second suit are the same, with the exception of HRT. As in the initial suit, the second suit alleges that RPI leased space in a shopping center to HRT for a term of sixty-five months, from November 1, 2006, through March 31, 2012. It further alleges the amount HRT agreed to pay in rent to RPI, together with operational costs, insurance costs, and taxes. Like the first lawsuit, the second suit alleges that Brown and Smith guaranteed HRT's performance of its lease obligations, including payment of rent and all other sums payable under the terms of the lease. The suit claims HRT, Brown and Smith failed to pay rent, operating expenses, taxes, and insurance beginning March 1, 2008, and, at that time, ceased conducting business in the leased premises. Thereafter, RPI changed the locks on the door to the leased premises. The suit alleged that Brown and Smith breached the guaranty by failing to pay amounts which accrued from October 1, 2008, through the expiration of the lease term on March 31, 2012.[13] RPI prayed for damages against Brown and Smith, jointly and severally, for damages in the amount of $240,868.46.

The subject matter of the two suits is the same. Brown and Smith's liability in both arise from the same transaction or series of transactions—their guaranty of HRT's obligations and the failure to pay in accordance with RPI's demands. The facts in both lawsuits are related in time, space, origin, and motivation and, as evidenced by the allegations in RPI's initial suit, could have

[13]RPI claimed damages of $240,868.46 in the second suit. The affidavit in support of RPI's first amended motion for summary judgment in that suit indicated that, "after the allowance of all just and lawful payments, offsets and credits, the sum of $207,484.70 has accrued under the terms of the Lease and Guaranty but has not been paid." Damages claimed in the initial suit were $16,194.10, plus damages for the balance of the lease term in the amount of $226,098.90.

11

easily formed a convenient trial unit. "Any cause of action which arises out of those same facts [in the prior litigation] should, if practicable, be litigated in the same lawsuit." *Id.* Moreover, where there is a legal relationship—such as under a lease or a contract—all claims arising from that relationship will arise from the same subject matter and be subject to res judicata. *Cherokee Water Co. v. Freeman*, 145 S.W.3d 809, 815 (Tex. App.—Texarkana 2004, pet. denied); *Musgrave v. Owen*, 67 S.W.3d 513, 520 (Tex. App.—Texarkana 2002, no pet.).

The second suit is barred because it arises out of the same subject matter of the initial suit and because, through the exercise of diligence, it could have been litigated in the initial suit.

Because the trial court correctly determined that RPI's claims were barred by res judicata, we do not address the issue of whether those same claims are barred by the statute of limitations.

*(2)    Modifying the Judgment Was Not Error*

The summary judgments for Smith and Brown were entered by interlocutory orders bearing different dates. An interlocutory default judgment was also rendered against Jones. On February 1, 2013, the parties filed a stipulation regarding attorney's fees for the purpose of facilitating the entry of an appealable final judgment. On February 19, 2013, the trial court entered a "Final and Appealable Summary Judgment in Favor of Defendants Troy Brown and Albert Smith."

Brown and Smith filed a motion to modify the judgment, claiming it indicated there were two final judgments.[14] Brown and Smith also complained that RPI attempted to reiterate the parties' agreed and filed stipulation regarding attorney's fees into the proposed final judgment,

---

[14]The judgment declared the interlocutory default judgment against Jones a final and appealable judgment of default.

12

but made several errors in that recitation. Brown and Smith, therefore, requested that the trial court vacate its earlier judgment and enter a modified final judgment. After a hearing, the trial court entered its final judgment April 2, vacating the February 19 judgment and substituting the new judgment in its stead.

The February 19 judgment included findings that the parties' stipulated attorney's fees were reasonable and necessary. The April 2 judgment omitted the recitation of the parties' attorney's fees stipulation (including findings of reasonableness and necessity) and instead ordered the parties to reimburse each other for fees and amounts in the stipulation, a copy of which was attached to the judgment.

On appeal, RPI complains that, to the extent the April 2 judgment omits findings regarding the reasonableness and necessity of the parties' stipulated attorney's fees, the trial court erred in modifying the judgment. Brown and Smith contend that the stipulation itself constitutes evidence of the reasonableness of attorney's fees awarded. *See, e.g.*, *Hall v. Hubco, Inc.*, 292 S.W.3d 22, 33 (Tex. App.—Houston [14th Dist.] 2006, pet. denied); *Jackson v. Barrera*, 740 S.W.2d 67, 69 (Tex. App.—San Antonio 1987, no writ). Neither party disputes the reasonableness or necessity of the stipulated fees. There is no disagreement presented on appeal regarding the stipulation itself, which is incorporated into the judgment. We overrule this point of error.

We affirm the judgment of the trial court.


Josh R. Morriss, III
Chief Justice

Date Submitted:     September 18, 2013
Date Decided:       October 1, 2013